UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:13-CV-00933-TBR

UNITED STATES OF AMERICA                                                              Plaintiff,

v.

EICHHORN STAINED GLASS, INC., et al.,                                              Defendants.

**MEMORANDUM OPINION**

This matter is before the Court upon the motion for summary judgment of the United States of America ("the Government"). (Docket No. 13.) Defendant Orionmegan Properties, LLC ("Orionmegan") has responded, (Docket No. 15), as has Defendant Eichhorn Stained Glass, Inc. ("Eichhorn"), (Docket No. 16). The Government has replied. (Docket No. 21.) In addition, Eichhorn has submitted a surreply. (Docket No. 22). Orionmegan has done the same. (Docket No. 23.) Fully briefed, this matter is ripe for adjudication. For the reasons explained below, the Government's Motion will be GRANTED IN PART and DENIED IN PART.

**Factual Background**

The Government commenced this civil action on October 1, 2013, to reduce to judgment its tax assessments and liens against Eichhorn. In Count I of its complaint, the Government seeks to reduce to judgment the Federal Insurance Contribution Act ("FICA") and Federal withholding tax assessed against Eichhorn for certain quarters between 2000 and 2004—specifically, the third and fourth quarters of 2000; all four quarters of 2001, 2002, and 2003; and the first quarter of 2004. The Government contends that it repeatedly filed notices of federal tax liens with the Jefferson County Clerk for these assessments, with fourteen such notices filed over a ten-year period. (*See* Docket No. 13-24 at 4.) Despite these notices, Eichhorn has not paid FICA and Federal withholding tax assessments. The Government's motion for summary judgment alleges that Eichhorn owes $285,898.75 in total, plus statutory additions. (Docket

1

No. 13-24 at 3.)  In Count II, the Government seeks to foreclose the corresponding federal tax liens against Eichhorn's alleged 58% interest in a three-story commercial building in Louisville, Kentucky ("the East Broadway Property").  The Government wishes to sell the real property, with any amounts attributable to Eichhorn's federal tax liens to be applied to Eichhorn's outstanding liabilities.  (Docket No. 1 at 2.)

From 1990 to 2010, Eichhorn operated a custom design glass studio at the East Broadway Property.  (Docket No. 1 at 5.)  On December 18, 1997, Eichhorn, along with Southern Light, Inc. ("Southern Light") and Rex Lagerstorm ("Lagerstrom"), entered into a contract ("the Building Association Contract") to purchase the East Broadway Property from Woosley Monuments, Inc. ("Woosley") for $165,000.  On the date of the sale, Woosley conveyed the property to the three buyers in exchange for a $165,000 mortgage.  According to the buyers' agreement, Eichhorn held 58% ownership of the building, with Southern Lights and Lagerstrorm owning 26% and 16%, respectively.  (Docket No. 1 at 5-6.)  The contract stipulates that each of the three buyers would be liable to Woosley for monthly mortgage payments in proportion to its percentage ownership.  (Docket No. 1 at 6.)  The instrument also provided for a party's default on the contract, explaining that the relevant percentages of ownership would increase or decrease based on the specific circumstances causing default.

On May 12, 2005, Southern Lights transferred its interest in the property to Light Speed Photo, Inc. ("LSP").  LSP then transferred its interest to Orionmegan Properties, LLC ("Orionmegan") on April 30, 2008.  (Docket No. 1 at 6.)  On July 21, 2011, Lagerstorm quitclaimed his 16% interest in the property to Orionmegan.  (Docket No. 1 at 6.)  As a result of these conveyances, Eichhorn continues to own 58% of the property, with Orionmegan owning the remaining 42%.

Because Orionmegan claims an interest in the property at issue, the Government named it a codefendant in this lawsuit pursuant to 26 U.S.C. § 7403.  Orionmegan filed an answer to the complaint and a crossclaim against Eichhorn on November 19, 2013.  In its answer, Orionmegan denies the

Government's allegation that Eichhorn owns a 58% interest in the East Broadway Property, arguing that a much smaller percentage is at stake. Orionmegan's crossclaim seeks to determine Eichhorn's percentage of ownership, if any, in the property at issue. (Docket No. 4.)

At the March 26, 2014 status conference regarding this matter, the Court directed the Government to file a motion for summary judgment addressing two issues. First, is the Government entitled to judgment as a matter of law regarding the tax assessments made by the Internal Revenue Service ("IRS") against Eichhorn? Second, do the tax liens attach to Eichhorn's interest in the East Broadway property, and if so, may the Government foreclose its liens upon that property? The Government having filed such motion and the Defendants having responded, these matters are now ripe for adjudication.

**Legal Standard**

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys.*

*Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

## Analysis

**I.  Because the Government's action for collection is not time-barred and no genuine issue of material fact exists, judgment will be entered in the Government's favor as to Count I.**

The IRS assessed FICA and Federal withholding tax against Eichhorn in the amount of $285,898.75 for the third and fourth quarters of 2000, all four quarters of 2001, 2002, and 2003, and the first quarter of 2004. (Docket No. 13-1, Declaration of Christopher Giesin, ¶ 6.) The Government has provided evidence of the recorded liens and the Form 4340 for each of its assessments. In response to the Government's Motion for Summary Judgment, Eichhorn contends that the tax assessments at issue are not collectible, as the limitations period for their enforcement has expired. The Internal Revenue Code provides:

> (a) Length of period.—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
> (1) within 10 years after the assessment of the tax . . . .

26 U.S.C. § 6502(a)(1). Eichhorn contends, therefore, that the Government must demonstrate that its action for collection of the taxes assessed against Eichhorn was commenced either by levy or court proceeding within ten years of the assessment of the tax.

When a taxpayer fails to pay assessed taxes after notice and demand, the Government generally has ten years from the date of an assessment to collect a federal tax liability by bringing suit to reduce the assessment to judgment. *See* 26 U.S.C. §§ 7401-7403, 6502(a)(1). However, offers in compromise suspend the running of the ten-year statute of limitations. *See* 26 U.S.C. §§ 6331(k) and (i)(5). An offer in compromise, authorized by 26 U.S.C. § 7122, is "a proposal from a taxpayer to the IRS made in an

effort to reduce that taxpayer's liability." *In re Shope*, 347 B.R. 270, 277 (Bankr. S.D. Ohio 2006). Offers in compromise contain a waiver of the limitations period, enabling the Government to consider the offer while averting the prejudice against collection of the tax that would result from continued running of the limitations period. *United States v. Ryals*, 480 F.3d 1101, 1105 (11th Cir. 2007). "The running of the statutory period is suspended until the offer of compromise is terminated, withdrawn, or formally rejected," plus thirty days thereafter. *United States v. Ressler*, 576 F.2d 650, 652 (5th Cir. 1978) (citations omitted); § 6331(k)(1)(B). Therefore, the instant suit will not be time-barred if it was filed within the extended limitations period created by the filing of an offer in compromise. *See* 26 U.S.C. § 6502(a)(1) (explaining that if the Government initiates a timely proceeding in court for the collection of a tax, "the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable.").

Here, Eichhorn filed two offers in compromise pertaining to the tax assessments at issue. According to the Government, Eichhorn first filed an offer in compromise on February 22, 2005, and the IRS rejected this offer on August 26, 2005—a 185-day period. (Docket No. 21-1, Second Declaration of Christopher Giesin, ¶ 7.) Eichhorn filed a second offer in compromise on December 8, 2005, which the IRS rejected on January 10, 2008, suspending the statute for a 763-day period. (Docket No. 21-1, Second Declaration of Christopher Giesin, ¶ 8.) Combined, these offers in compromise suspended the statute of limitations on collection for a total of 948 days. (Docket No. 21-7, Second Declaration of Christopher Giesin, ¶ 9.)

The Complaint was filed against Eichhorn on September 30, 2013. Given the extended limitations period, increased by 948 days, this lawsuit was timely filed for collection of Eichhorn's

liabilities for the fourth quarter of 2000, the four quarters of 2001, 2002, and 2003, and the first quarter of 2004. However, the Government admits that the suit was not timely filed for collection of Eichhorn's liabilities for the third quarter of 2000. Because collection of this quarter's liabilities is barred by the statute of limitations, the $12,815.51 attributable to that period is not collectible. (*See* Docket No. 21-7, Second Declaration of Christopher Giesin, ¶ 8; Docket No. 21-1 at 8, Exhibit A, Collection Statute Computation.)

Eichhorn further argues that the liens were not refiled within the statutory period and were accordingly released or otherwise unenforceable. (Docket No. 16-1 at 1-2.) The notice of federal tax lien contains a section entitled "Important Release Information." This section provides that "[f]or each assessment below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a)."[1] Eichhorn first points to the assessments for the third and fourth quarters of 2000 and the first three quarters of 2001, arguing that liens were filed only after "a significant lapse of time after the deadline for refiling." (Docket No. 16-1 at 4.) Eichhorn next alleges that for the fourth quarter of 2001, all four quarters of 2002, and the first quarter of 2003, liens were not refiled. According to Eichhorn, the liens were released automatically when the Government failed to either refile tax liens or file suit. (Docket No. 16 at 5.)

---

[1] 26 U.S.C. § 6325(a) provides:

> (a) Release of lien.—Subject to such regulations as the Secretary may prescribe, the Secretary shall issue a certificate of release of any lien imposed with respect to any internal revenue tax not later than 30 days after the day on which—
>
> (1) Liability satisfied or unenforceable.—The Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable; or
>
> (2) Bond accepted.—There is furnished to the Secretary and accepted by him a bond that is conditioned upon the payment of the amount assessed, together with all interest in respect thereof, within the time prescribed by law (including any extension of such time), and that is in accordance with such requirements relating to terms, conditions, and form of the bond and securities thereon, as may be specified by such regulations.

The Government concedes that its notices of federal tax lien ("NFTLs") were automatically released when the IRS failed to refile them after ten years. However, this release does not impact the statute of limitations concerning collection, nor does it bar the IRS from refiling such notices. The Internal Revenue Code provides for the refiling of a lien that was erroneously released. Section 6325(a) provides that the Secretary of the Treasury shall issue a certificate of release of a lien imposed with respect to a revenue tax no later than thirty days after the day on which "[t]he Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable." 26 U.S.C. § 6325(a)(1). However, a mistaken release can be corrected.

> (2) Revocation of certificate of release or nonattachment.—If the Secretary determines that a certificate of release or nonattachment of a lien imposed by section 6321 was issued erroneously or improvidently . . . and if the period of limitation on collection after assessment has not expired, the Secretary may revoke such certificate and reinstate the lien—
>
> (A) by mailing notice of such revocation to the person against whom the tax was assessed at his last known address, and
>
> (B) by filing notice of such revocation in the same office in which the notice of lien to which it relates was filed (if such notice of lien had been filed).

26 U.S.C. § 6325(f)(2). *See also* 26 C.F.R. § 301.6325-1(f)(2) (explaining that the certificate may be revoked and the tax lien reinstated if a certificate of release was improvidently or erroneously issued and the period of limitation on collection after assessment of the tax liability has not expired). A reinstated lien becomes effective upon the date the notice of revocation is mailed to the taxpayer, but not before the filing of notice of revocation. 26 C.F.R. § 301.6325-1(f)(2)(iii). The notice of revocation must be filed "in the same office in which the notice of lien to which it relates was filed." 26 C.F.R. § 301.6325-1(f)(2)(ii).

Here, the IRS filed the appropriate Notices of Federal Tax Lien Refiling in the office of the Jefferson County Clerk in Louisville, Kentucky, for FICA and Federal withholding tax owed by Eichhorn for the fourth quarter of 2001 and the first, second, and third quarters of 2002. The IRS filed a Revocation of Certificate for Release of Federal Tax Liens with the Jefferson County Clerk for the third and fourth quarters of 2000 and the first, second, and third quarters of 2001. (*See* Docket No. 21-1, at 10, 12, 14, 16-17, 19-20.) All were filed prior to the expiration of the extended statute of limitations for collection of Eichhorn's tax liabilities pursuant to 26 U.S.C. § 6502(a)(1). Because the IRS timely revoked the relevant certificates of release of federal tax lien, collection is not barred.

Accordingly, the Court will enter judgment in favor of the United States against Eichhorn in the amount of $285,898.75, less the $12,815.51 attributable to the third quarter of 2000, which is time barred. Eichhorn's indebtedness, then, totals $273,083.74, plus statutory additions to tax accruing thereon according to law.

**II.     The Government's Motion shall be granted in part as to foreclosure of the tax liens.**

Section 7403 of the Internal Revenue Code of 1954, 26 U.S.C. § 7403, permits the judicial sale of certain properties to satisfy the tax indebtedness of delinquent taxpayers. Section 7403 provides, in relevant part:

> (a) Filing.—In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or subject to any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.
>
> . . .
>
> (c) Adjudication and decree.—The Court shall, after the parties having been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the

> United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

The "lien of the United States" referred to in this section is created by 26 U.S.C. § 6321 and arises when a taxpayer fails to pay his taxes after assessment, notice, and demand. "This lien arises upon assessment and attaches to 'all property and rights to property, whether real or personal, belonging to [the taxpayer] including property which the taxpayer subsequently acquires.'" *United States v. Gen. Motors Corp.*, 929 F.2d 249, 251 (1991) (quoting *United States v. Safeco Ins. Co. of Am., Inc.*, 870 F.2d 338, 340 (6th Cir. 1989)). Courts construe this section broadly in light of Congress's intent to "reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985). Despite its broad provisions, though, § 7403 "is punctilious in protecting the vested rights of third parties caught in the Government's collection effort, and in ensuring that the Government not receive out of the proceeds of the sale any more than that to which it is properly entitled." *United States v. Rodgers*, 461 U.S. 677, 699 (1983).

In cases involving the tax collection scheme, the threshold question "is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach." *Aquillino v. United States*, 363 U.S. 509, 512 (1960). To determine the answer, the Court looks to state law, which controls "in determining the nature of the legal interest which the taxpayer had in the property sought to be reached by the statute." *Id.* at 513 (quoting *Morgan v. Comm'r of Internal Rev.*, 309 U.S. 78, 82 (1940)). But although state law defines the underlying property interests, "the consequences that attach to those interests is a matter left to federal law." *Rodgers*, 461 U.S. at 683; *see also Safeco Ins.*, 870 F.2d at 340 ("[T]he state-law consequences flowing from a property interest properly defined under state law are of no concern to the operation of the federal tax law."). Accordingly, in determining whether property is subject to a federal tax lien, a court must undertake a two-part analysis: first, the court must determine, based upon state law, the nature and legal interest the taxpayer has in the property the Government seeks to reach; and second, the court must look to federal law to determine whether the state-law right

constitutes "property" or "rights to property" attachable by a federal tax lien. *Drye v. United States*, 528 U.S. 49, 58 (1999); *Nat'l Bank of Commerce*, 472 U.S. at 722 (1985); *Aquillino*, 363 U.S. at 513.

### a. The deed having created a joint tenancy, Eichhorn holds a one-third ownership interest in the East Broadway Property.

The parties dispute the percentage of ownership in the East Broadway Property properly attributable to Eichhorn. According to the Government, Eichhorn owned a 58% interest at the time the federal tax liens arose, with Orionmegan owning the remaining 42%. (Docket No. 13-24 at 13.) Eichhorn relies upon the terms of the Building Association Contract that the various owners entered into on December 18, 1997. In its crossclaim, Orionmegan alleges that the deed, not the contract, controls the percentage of ownership. According to Orionmegan, the deed created a joint tenancy among the three original property owners, leaving Eichhorn with a one-third share.

"The interpretation of a deed is a matter of law and the court is bound by the four corners of the document." *Florman v. MEBCO Ltd. Partnership*, 207 S.W.3d 593, 600 (Ky. App. 2006). Kentucky law makes clear that "[e]xtrinsic evidence cannot be admitted to vary the terms of a written instrument in the absence of an unambiguous deed." *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000); *see also Lambert v. Pritchett*, 284 S.W.2d 90, 90 (Ky. 1955) ("The law in this state is well settled that the intention of the parties to a deed must be gathered from the instrument itself, unless the provision to be construed is ambiguous, in which event extrinsic evidence may be admitted to prove the intention."). Although Eichhorn urges the Court to ignore the efficacy of the contract's language and to look instead to the parties' intent, this argument finds little support in relevant caselaw. "[I]f an otherwise unambiguous deed can be attacked, then few, if any, can rely on a deed of record and there can be no certainty." *Hoheimer*, 30 S.W.3d at 179. Accordingly, the Court need not consider extrinsic evidence concerning what the parties intended by a certain phrase "if the phrase has an established meaning so as not to fall into the category of an ambiguity." *Id.*

According to the deed executed on December 18, 1997, and recorded on March 16, 2001, Woosley conveyed the East Broadway Property to the three original owners as "joint tenants with remainder in fee simple to the survivor of them." (Docket No. 15-2, General Warranty Deed, at 3.) Thus, as a matter of law, the deed at issue is not ambiguous: given their use of the phrase "joint tenants" and their reference to survivorship, the parties clearly intended to create a joint tenancy. Consequently, the Court may not consider extrinsic evidence—namely, the Building Agreement Contract—in interpreting the deed. *See* Richard A. Lord, *Williston on Contracts* § 33:42 (4th ed. 1990).

Accordingly, each of the three original owners enjoyed an undivided one-third interest in the property until April 2005, when Southern Light transferred its one-third interest to LightSpeed Photos, Inc., using a corporate warranty deed.[2] (Docket No. 15-5, Purchase Agreement.) This conveyance destroyed the original joint tenancy: although Eichhorn and Lagerstrom continued to hold their 1/3 shares as joint tenants with respect to each other, LightSpeed became a tenant in common with them. *See Sanderson v. Saxon*, 834 S.W.2d 676, 679 (Ky. 1992); *Newton v. Newton*, 365 565, 569 (Ky. App. 2011) ("[I]f one joint tenant decides to convey his or her interest in the property, the joint tenancy is destroyed."). In February 2008, Orionmegan purchased LightSpeed's interest in the property as a tenant in common with the Eichhorn-Lagerstrom joint tenancy, which remained intact. (*See* Docket No. 15-6, Corporate Warranty Deed.) In December 2001, Lagerstrom sold his one-third interest to Southern Light by contract; in July 2011, Rex transferred this interest to Southern Light's successor, Orionmegan. (Docket No. 15-7, Quitclaim Deed.)

---

[2] Eichhorn argues that the existence of a tenancy in common rather than a joint tenancy is evidenced by the owners' subsequent transfers of their interests. According to Eichhorn, an original owner must be a tenant in common to transfer his ownership without the consent of all of the joint owners. Kentucky law contravenes this argument, however: a transfer of interest in the joint tenancy does not require the owners' unanimous consent. Instead, if a joint tenant conveys his interest to a third party, the joint tenancy is destroyed, and a tenancy in common arises between the third-party transferee and all remaining joint tenants. "[J]oint tenants . . . may deal with the property between them as they wish, making decisions as individuals, and not as one entity." *Newton v. Newton*, 365 565, 569 (Ky. App. 2011).

As a result of these conveyances, Orionmegan ultimately owned two-thirds of the East Broadway Property in a tenancy in common with Eichhorn, which owned one-third of the property. Despite the terms of the contract, then, Eichhorn has never held more than a one-third interest in the East Broadway Property—the same amount that it owns today.

b. **The Government may foreclose its liens upon the East Broadway Property.**

Having determined Eichhorn's rights under Kentucky law, the Court will next look to federal law to determine whether the state-law right constitutes "property" or "rights to property" attachable by a federal tax lien. *Drye*, 528 U.S. at 58; *Nat'l Bank of Commerce*, 472 U.S. at 722; *Aquillino*, 363 U.S. at 513. Courts have consistently held that property is subject to a federal tax lien if it has beneficial value for its holder and can be transferred or sold. *See, e.g.*, *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1171 (6th Cir. 1990) (citing *21 West Lancaster Corp. v. Main Line Restaurant, Inc.*, 790 F.2d 354, 356-58 (3d Cir. 1986)).

A federal tax lien attaches when the tax assessment is made and continues until the liability is either satisfied or becomes unenforceable due to the lapse of time. 26 U.S.C. § 6322. Here, the federal tax lien attached to Eichhorn's "property or rights to property"—that is, the one-third interest in the East Broadway property—when it arose by operation of law on December 25, 2000, the date of the first assessment. The Government seeks foreclosure and sale of this property, with the proceeds to be distributed among the parties according to their rights as determined by the Court and the amounts attributable to the federal tax liens to be applied to Eichhorn's FICA and Federal withholding tax liabilities.

Applying Kentucky law, it is clear that Eichhorn's interest in the property was both beneficial and transferrable. Under Kentucky law, a joint tenant may transfer his interest in property; has a qualified right to rents, profits, and accounting; and enjoys a right to contributions from other joint tenants for expenditures made for all. *See generally Newton*, 365 S.W.3d at 569 (acknowledging that one joint tenant

may convey his interest in the property independently from the other joint tenants); *Cain's Adm'r v. Hubble*, 211 S.W. 413, 416 (Ky. 1919) ("[A] joint tenant [is] entitled to contribution from a cotenant for necessary repairs made" where the cotenant refuses to assist or is under disabilities.") (citing *Alexander v. Ellison*, 79 Ky. 148 (Ky. 1880)); *Miller v. Powers*, 212 S.W. 453, 456 (Ky. 1919) (noting that joint tenants are entitled to a division of profits and an accounting for rents and royalties). No evidence suggests that Eichhorn lacked the ability to exercise such rights. As a consequence, Eichhorn's interest in the property is subject to the attachment of a lien pursuant to federal law.

Orionmegan has conceded that the Government's tax liens have a priority interest in the Property. (Docket No. 15 at 9.) Moreover, Orionmegan's crossclaim does not vary the effect of the federal tax lien attached to Eichhorn's interest in the property. The Sixth Circuit has explained, "A federal tax lien attaches to a taxpayer's interest in property regardless of whether that interest is less than full ownership or is only one among several claims of ownership. Unresolved questions concerning the ultimate ownership of the property will not prevent provisional attachment of a federal tax lien." *United States v. Safeco Ins. Co. of Am., Inc.*, 870 F.2d 338, 341 (6th Cir. 1989) (citations omitted).

Section 7403 provides that the court "*shall* . . . proceed to adjudicate all matters involved therein and finally determine the merits of all claims to any liens upon the property, and, in all cases where a claim or interest of the United States therein is established, *may* decree a sale of such property . . . ." (emphasis added). The Supreme Court instructs that the statute "does not require a district court to authorize a forced sale under absolutely all circumstances, and that some limited room is left if the statute for the exercise of reasoned discretion." *Rodgers*, 461 U.S. at 706. In exercising its equitable discretion, the Court may look to both the Government's interest in promptly collecting delinquent taxes and the possibility that innocent third parties may suffer undue harm as a result of that effort. *Id.* In light of the above discussion concerning the parties' respective percentages of ownership, the Court finds that sale of the property will prejudice no party to this action.

Having determined that judgment shall be entered against Eichhorn in the amount of $273,083.74, plus statutory additions to tax accruing thereon according to law,[3] the Court concludes that the Government has a valid lien against Eichhorn's interest in the property at issue; that Eichhorn's interest was an undivided one-third interest in the property; and that the Government's lien may be foreclosed in these proceedings by a judicial sale of such interest in the property presently held by Eichhorn to satisfy its lien, to the extent allowable. An appropriate Order will issue contemporaneously with this Memorandum Opinion.

---

[3] In an action to collect a tax assessment, the court presumes that the assessment is valid, thus establishing a prima facie case of liability against the taxpayer. If the taxpayer challenges the assessment's validity by providing "reasonable denials," the burden shifts back to the Government, which must substantiate its assessment. *United States v. Bease*, 623 F.2d 463, 465 (6th Cir. 1980). "Certificates of assessments and payments are generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made." *Gentry v. United States*, 962 F.2d 555, 557 (6th Cir. 1992) (citations omitted). Here, the Government has satisfied its burden of going forward by presenting certified copies of its assessments; Form 4340, Certificate of Assessments and Payments and Other Specified Matters ("Form 4340") reflects the various taxes assessed, their amounts, and the dates of notices and demands for payment. The Government having satisfied its initial burden, Eichhorn must prove the assessment erroneous by a preponderance of the evidence. *Higginbotham v. United States*, 556 F.2d 1173, 1175 (4th Cir. 1977). Notwithstanding the above-mentioned argument concerning the statute of limitations, Eichhorn has offered no such argument.